IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CUPERTINO JURADO ROJO and all others similarly situated under 29 U.S.C. 216(b),<br><br>    Plaintiff,<br><br>V.<br><br>BURGER ONE LLC and CHRIS SRIVARODOM,<br><br>    Defendants. | § § § § § § § § § § § § § |

No. 3:11-cv-2968-BN

## **MEMORANDUM OPINION AND ORDER**

Cupertino Jurado Rojo has filed a motion for default judgment against defendant Chris Srivarodom. *See* Dkt. No. 137.

For the reasons outlined below, the Court grants Mr. Rojo's motion for default judgment.

### **Background**

Cupertino Jurado Rojo filed his complaint in this court against defendants Burger One LLC and Chris Srivarodom alleging violations of the Fair Labor Standards Act ("FLSA"). *See* Dkt. No. 1. Mr. Rojo alleges that he did not receive overtime wages while employed at Burger One LLC as a cook, dishwasher, and busboy. *See id.* at 1.

Defendants Burger One LLC and Chris Srivarodom filed an answer to Plaintiff's Complaint on November 28, 2011 [Dkt. No. 7 at 1-2], but the Court struck Burger One LLC's answer for failure to appear through counsel. *See* Dkt. No. 8 at 1.

Mr. Rojo filed a motion for default judgment against Burger One LLC, and the Court granted in part and denied in part the motion. *See* Dkt. No. 19; Dkt. No. 35. All that remains as to Burger One is to enter judgment against it on the Court's prior findings on the motion for default judgment – which has not been set aside or vacated. *See* Dkt. 137 at 2.

The procedural history of the case against Mr. Srivarodom is long and explained through other orders.

Most recently, after Mr. Srivarodom failed to appear for a show cause hearing, the Court stuck Mr. Srivarodom's Amended Answer to Plaintiff's Complaint [Dkt. No. 59] as sanctions, placing Mr. Srivarodom in default. *See* Dkt. No. 135. The Court ordered Mr. Rojo to move for default judgment or dismiss the case against Mr. Srivarodom. *See id.* at 7. And Mr. Rojo filed this motion for default judgment against Mr. Srivarodom. *See* Dkt. No. 137.

**Legal Standards**

Federal Rule of Civil Procedure 55(b)(2) governs applications to the Court for default judgment. *See* FED. R. CIV. P. 55(b)(2).

A plaintiff seeking a default judgment must establish: (1) that the defendant has been served with the summons and complaint and that default was entered for its failure to appear; (2) that the defendant is neither a minor nor an incompetent person; (3) that the defendant is not in military service or not otherwise subject to the Soldiers and Sailors Relief Act of 1940; and (4) that, if the defendant has appeared in the action, the defendant was provided with notice of the application for default

judgment at least three days prior to the hearing. *See Arch Ins. Co. v. WM Masters & Assocs., Inc.*, No. 3:12-cv-2092-M, 2013 WL 145502, at *2-*3 (N.D. Tex. Jan. 14, 2013).

The plaintiff must also make a *prima facie* showing there is "jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

In the Fifth Circuit, three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment by the district court. *See New York Life Ins. Co. v. Brown,* 84 F.3d 137, 141 (5th Cir. 1996). A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure. *See id.* The clerk will enter default when default is established by an affidavit or otherwise. *See id.* After the clerk's entry of default, a plaintiff may apply to the district court for a judgment based on such default. *See id.*

The Fifth Circuit favors resolving cases on their merits and generally disfavors default judgments. *See Rogers v. Hartford Life & Accident Ins. Co.,* 167 F.3d 933, 936 (5th Cir. 1999); *see also Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n,* 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the federal rules and resorted to by the courts only in extreme situations."). But this policy is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *Rogers,* 167 F.3d at 936 (quoting *Pelican Prod. Corp. v. Marino,* 893 F.2d 1143, 1146 (10th Cir. 1990) (internal quotations omitted)); *see*

*also Merrill Lynch Mortg. Corp. v. Narayan,* 908 F.2d 246, 253 (7th Cir. 1990) (noting that default judgments allow courts to manage their dockets "efficiently and effectively").

Before entering a default judgment, a court should consider any relevant factors. Those factors may include "(1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) harshness of default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion." *Arch*, 2013 WL 145502, at *3 (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). The Court should also consider whether the defendant has a meritorious defense to the complaint. *See id.*

An entry of default "does not establish the amount of damages. After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages." *United States of Am. for Use of M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (cleaned up); *cf. Jackson v. FIE Corp.*, 302 F.3d 515, 524-31 (5th Cir. 2002) (holding that jurisdictional allegations and findings supporting a default judgment are not entitled to preclusive effect in the personal-jurisdiction context of Federal Rule of Civil Procedure 60(b)(4)). A court may enter default judgment against a party and determine damages without the benefit of an evidentiary hearing "where the amount claimed is a liquidated sum or one capable of

mathematical calculation." *Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998) (cleaned up).

## Analysis

I. <u>The Court has subject matter jurisdiction and personal jurisdiction.</u>

Mr. Rojo has shown the Court has subject matter jurisdiction.

The Court has jurisdiction under 28 U.S.C. § 1331 because this is a "civil action[] arising under the … laws … of the United States." 28 U.S.C. § 1331. Mr. Rojo alleges violations of the Fair Labor Standards Act, a federal law. *See* Dkt. No. 1 at 1.

A judgment without personal jurisdiction is void," and a "district court has the duty to ensure it has the power to enter a valid default judgment." *Sys. Pipe & Supply*, 242 F.3d at 324. In assessing personal jurisdiction, "the Texas long-arm statute extends to the limits of federal due process." *Bulkley & Associates, L.L.C. v. Dep't of Indus. Relations, Div. of Occupational Safety & Health of the State of California*, 1 F.4th 346, 351 (5th Cir. 2021). Federal due process requires that "the suit aris[es] out of or relate[s] to the defendant[s'] contacts with" Texas. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

Mr. Srivarodom received service at his address in Dallas, Texas. *See* Dkt. No. 5 at 11. And the case arises out of Mr. Rojo's employment with Burger One LLC under the ownership of Mr. Srivarodom, which regularly transacts business with the Northern District of Texas, and all acts in question took place in the Northern District of Texas. *See* Dkt. No. 1 at 1. This Court has personal jurisdiction over Mr. Srivarodom.

II. <u>The procedural requirements for default judgment have been met.</u>

Mr. Rojo has satisfied the prerequires for entry of default judgment against Mr. Srivarodom:

- Summons was issued to Mr. Srivarodom and was returned executed. *See* Dkt. Nos. 4 & 5.

- Mr. Rojo filed a motion for default judgment on May 18, 2023. *See* Dkt. No. 137.

- The Clerk of Court entered default judgment against Mr. Srivarodom on November 2, 2023. *See* Dkt. No. 139.

- Mr. Srivarodom's amended answer to the complaint was struck by this Court, putting him in default. *See* Dkt. No. 135.

- Mr. Rojo sent Mr. Srivarodom written notice of this application as required by Federal Rule of Civil Procedure 55(b)(2) by sending a copy via First Class Mail to Mr. Srivarodom's address on record. *See* Dkt. No. 137 at 11.

III. <u>Mr. Rojo's pleadings support default judgment on his claim.</u>

Mr. Rojo has alleged claims of failure to pay overtime and minimum wage in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201-216. The FLSA mandates that "no employer shall employ any of [his] employees ... for a workweek longer than forty hours unless such employee receives compensation for [his] employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which [he] is employed." 29 U.S.C. § 207(a)(1). The FLSA also mandates that "[e]very employer shall pay to each of his employees who in any

workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages…." 29 U.S.C. § 206(a).

To state a claim under Sections 206 and 207, a plaintiff must plausibly allege: "(1) that an employer-employee relationship existed during the [relevant] time [period and] ... (2) that the employee engaged in activities covered by the FLSA." *Johnson v. Heckmann Water Resources, Inc.*, 758 F.3d 627, 630 (5th Cir. 2014). The plaintiff must also allege (3) that the employer violated the FLSA's minimum wage requirements; (4) the amount of minimum wage compensation due; (5) that the employer violated the FLSA's overtime wage requirements; (6) the amount of overtime compensation due. *See id.*; *Flores v. Act Event Services, Inc.*, 55 F. Supp. 3d 928, 935 (N.D. Tex. 2014).

"Liability for violating the FLSA's overtime provision attaches to individuals and entities who qualify as an 'employer.' *Kibodeaux v. A&D Ints., Inc.*, No. 3:20-CV-00008, 2022 WL 980354, at *3 (S.D. Tex. Mar. 31, 2022) (cleaned up). The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

"An employee may have multiple employers under the FLSA, in which case, 'all joint employers are responsible, both individually and jointly, for compliance with all the applicable provisions of the [FLSA].'" *Fernandez v. JaniKing Int'l, Inc.*, No. CV H-17-1401, 2018 WL 539364, at *2 (S.D. Tex. Jan. 8, 2018) (quoting 29 C.F.R. § 7912(a)). "But, it is not enough to allege, in a conclusory or collective manner, that

several defendants are a plaintiff's 'employer' for FLSA purposes. Instead, '[w]here a complaint seeks to hold more than one employer liable under the FLSA, some facts at least of the employment relationship must be set forth in order to make out a facially plausible claim of multiple employer liability under the FLSA.'" *Id.* (quoting *Kaminski v. BMW Sugar Land Partners*, Civil Action No. H10-551, 2010 WL 4817057, at *2 (S.D. Tex. Nov. 19, 2010)).

The United States Court of Appeals for the Fifth Circuit uses the "economic realities" test to determine who is an employer under the FLSA. *See Gray v. Powers*, 673 F.3d 352, 354-55 (5th Cir. 2012).

To determine whether an individual or entity is an "employer," a court considers whether the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 355.

The Court must apply the economic realities test to each individual or entity alleged to be an employer. *See id.* But all four of the factors need not be present in each case to find an employee-employer relationship. *See id.* at 357. Rather, the Court must consider the totality of the circumstances and the economic reality of the overall relationship. *See Hodgson v. Griffin & Brand of McAllen, Inc.*, 471 F.2d 235, 237-38 (5th Cir. 1973) ("Whether appellant is an employer of the harvest workers does not depend on technical or isolated factors but rather on the circumstances of the whole

activity; it depends not on the form of the relationship but on the economic reality.") (cleaned up).

"'The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'" *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)); *see also Hernandez v. Larry Miller Roofing, Inc.*, 628 F. App'x 281, 284 (5th Cir. 2016). An individual's status as an officer or shareholder alone will not subject them to FLSA liability absent some showing "where operational control coincides with one's position as a shareholder, officer, or owner." *Gray*, 673 F.3d at 355-56 (declining to infer authority to hire and fire based on an argument that a member or officer has inherent power to fire employees).

Mr. Rojo alleges that Mr. Srivarodom "is the corporate officer/owner of the corporate Defendant who ran the day to day operations of the corporate Defendant for the relevant time period and was responsible for paying Plaintiff's wages and/or regularly controlled Plaintiff's work upon information and belief." Dkt. No. 1 at 1.

And, so, Mr. Rojo has plausibly alleged that Mr. Srivarodom determined the rate and method of payment, meeting one factor of the economic realities test. Mr. Rojo's allegations that Mr. Srivarodom controlled his work plausibly allege Mr. Srivarodom controlled Mr. Rojo's employee work schedule, another factor of the economic realities test. As Mr. Rojo has plausibly alleged two factors of the economic realities test, and Mr. Srivarodom is the owner of the business, Mr. Rojo has

sufficiently pled an employer-employee relationship between himself and Mr. Srivarodom.

The employee must also engage in activities covered under the FLSA. Plaintiff must prove that he was an employee "engaged in commerce or in the production of goods for commerce" or "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a), 207(a).

The first type of coverage is known as "individual coverage," and the second type of coverage is known as "enterprise coverage." *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992). Mr. Rojo asserts enterprise coverage. *See* Dkt. No. 1 at 2.

The FLSA defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). "[A]n employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State." 29 U.S.C. § 203(j).

As to enterprise coverage, the FLSA defines an "enterprise engaged in commerce or in the production of goods for commerce" as one that "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and ... is an enterprise whose annual gross volume of sales made or business done is not less than $500,000

-10-

(exclusive of excise taxes at the retail level that are separately stated)." 29 C.F.R. § 203(s)(1).

Mr. Rojo alleges that

> [b]oth the Defendants' business and Plaintiff's work for Defendants affected interstate commerce for the relevant time period substantially. Plaintiff's work for the Defendants affected interstate commerce for the relevant time period because the good and materials that he used or handled on a constant and/or continual basis and/or that were supplied to him by the Defendants to use on the job moved through interstate commerce prior to and/or subsequent to Plaintiff's use of the same. Plaintiff's work for the Defendants was actually in and/or so closely related to the movement of commerce while he worked for the Defendants that the Fair Labor Standards Act applies to Plaintiff's work for the Defendants.
> The Defendants, on information and belief, had gross sales or business done in excess of $500,000 annually for the years 2007, 2008, 2009, 2010, and 2011.
> Furthermore, Defendants regularly employed two or more employees for the relevant time period who handled materials that travelled through interstate commerce, or used instrumentalities of interstate commerce, thus making Defendant's business an enterprise covered under the Fair Labor Standards Act. The individual Defendant owns other businesses (restaurants) in the Northern District of Texas which conducts the same business as the Defendant and which is operated with the Corporate Defendant for a common business purpose by the individual Defendant for the relevant time period and which forms an enterprise with the Defendant Corporation for the relevant time period.

Dkt. No. 1 at 2-3.

As Mr. Rojo alleges that he handled goods in interstate commerce, and the business made over $500,000 annually, Mr. Rojo has sufficiently pled he was engaged in activities covered by the FLSA.

Mr. Rojo sufficiently alleges that Mr. Srivarodom violated the minimum wage requirements of the FLSA. Mr. Rojo states in his declaration that

> I worked for the Defendants, Burger One LLC and Chris Srivarodom… for the period of January 1, 2011 until August 3, 2011. … I did not receive any payment [for] at all for 20 weeks.

Dkt. No. 137-1 at 1.

Mr. Rojo also alleges that Mr. Srivarodom violated the overtime requirements of the FLSA. Mr. Rojo states that

> Plaintiff worked an average of 78 hours per week for the stated time period above and was paid at rate equivalent to $9.60/hr., but was not paid any overtime wages for the entire time Plaintiff worked for the Defendants and is therefore claiming overtime wages for the hours that he worked in excess of forty hours weekly. The Defendants' payment to Plaintiff for this time period did not meet the federal overtime wage law requirements.

Dkt. No. 1 at 3.

The allegations are sufficient to plead that Mr. Srivarodom violated the overtime requirements of the FLSA.

Mr. Rojo also calculates the damages due in an affidavit attached to the motion for default judgment. As this Court previously found,

> [b]ased on the well-pleaded allegations of Plaintiff's Complaint, which the court accepts as true, and based on Plaintiff's declaration, the Court determines that Burger One LLC has violated the FLSA by failing to pay Plaintiff minimum wage and overtime as required under the statute. In his declaration, Plaintiff provides evidence of his hourly rate and the number of hours he worked overtime. His calculation for the amount of unpaid overtime wages owed is $4,841.20. Plaintiff also provides evidence that he did not receive any payment at all for 20 weeks, for which he claims minimum wages. Plaintiff also seeks overtime for these weeks, which is included in the amount of unpaid overtime wages stated above. His calculation for the amount of unpaid minimum wages is $11,310.00.

Dkt. No. 35 at 3.

Mr. Rojo's allegations entitle him to damages.

Ordinarily, damages will not be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). But, when the amount of damages and/or costs can be determined with certainty by reference to the pleadings and supporting documents, and when a hearing would not be beneficial to the court, a hearing is unnecessary. *See Leedo Cabinetry*, 157 F.3d at 414*; see also James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." *James*, 6 F.3d at 311 (internal citations omitted).

Under the FLSA, "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

A plaintiff's declaration is sufficient to establish damages under the FLSA. *See Gomez v. Managing Innovation & Tech., Inc.*, No. 3:14-CV-0936-M, 2015 WL 6150905 at *2 (N.D. Tex. Oct. 15, 2015).

To calculate the damages owed as overtime pay, "[i]f the employee is employed solely on the basis of a single hourly rate, the hourly rate is the 'regular rate,'" the rate at which an employee must be compensated for overtime. 29 C.F.R. § 778.110; 29 U.S.C. § 207. The regular rate includes "all renumeration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e).

Mr. Rojo declares that he worked an average of $10.00 per hour, putting the excess overtime rate at $5.00 an hour, for 11 weeks. *See* Dkt. No. 137-1 at 1-2. He states he worked 38 hours of overtime during the 11 weeks. *See id*. This entitles him to $2,090 in overtime pay. *See id*.

Mr. Rojo also declares that he worked 78 hours for 20 weeks with no pay. *See id*. With the minimum wage at $7.25 for 78 hours a week for 20 weeks, Mr. Rojo is owed $11,310.00. *See id*. at 2. Calculating overtime at half the rate of minimum wage, for the 38 hours of overtime for 20 weeks, Mr. Rojo is owed an additional $2,751.20. *See id*.

Mr. Rojo also requests liquidated damages in an equal amount to what he is owed for both overtime and minimum wage work. A plaintiff is entitled to an equal amount in liquidated damages if the failure to pay is a willful violation. 29 U.S.C. § 216(b). Mr. Rojo has alleged that Mr. Srivarodom violated the FLSA willfully. *See* Dkt. No. 1 at 3.

"Once mandatory, the assessment of liquidated damages is now discretionary; the district court can now decline to award such damages (or reduce the amount) if the court concludes that the employer acted in good faith and had reasonable grounds to believe that its actions complied with the FLSA. However, the employer must carry a substantial burden to demonstrate good faith and a reasonable belief that its actions did not violate the FLSA." *Picasso v. Halal Beasley Ranch, LLC*, No. 3:18-CV-53, 2019 WL 4054036, at *1 (S.D. Tex. Aug. 28, 2019) (cleaned up). "Here, that burden is necessarily unmet, as the defendants have defaulted." *Id*.

As Mr. Rojo is owed $16,151.20 total in minimum and overtime pay, he is owed a total of $32,302.40 including liquidated damages. *See* Dkt. No. 137-1 at 2.

The "overwhelming weight of authority" holds that an employer is jointly and severally liable under the FLSA for unpaid wages. *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984); *see also Lee v. Coahoma Cnty., Mississippi*, 937 F.2d 220, 226 (5th Cir. 1991) ("If an individual with managerial responsibilities is deemed an employer under the FLSA, the individual may be jointly and severally liable for damages resulting from the failure to comply with the FLSA."), *modified on other grounds*, 37 F.3d 1068 (5th Cir. 1993); *Moreno v. Edcare Mgmt.*, 243 F.R.D. 258, (W.D. Tex. 2007) ("All entities that are employers within the meaning of the FLSA are jointly and severally liable for all damages that stem from failure to comply with the provisions of the FLSA.") (citing cases). As the Court has already granted default judgment against Burger One LLC and found them liable for the $32,302.40, Mr. Srivarodom and Burger One LLC are jointly and severally liable for paying Mr. Rojo's damages.

Mr. Rojo seeks reasonable attorneys' fees under 29 U.S.C. § 216(b), which provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." Mr. Rojo also seeks to recover costs of court. Having no calculation of attorneys' fees and per his attorney's request, Mr. Rojo is permitted to file a motion showing evidence of reasonable attorneys' costs and fees for the Court's consideration.

Mr. Rojo also seeks to collect post-judgment attorneys' fees incurred in collecting the default judgment. In support of this, Mr. Rojo cites a case from the Southern District of Florida allowing recovery of post-judgment attorney's fees under the FLSA. *DiFrancesco v. Home Furniture Liquidators, Inc.*, No. 06-21709-CIV, 2009 WL 36550 (S.D. Fla. Jan. 6, 2009). The Court will consider this request with the additional filing, if any, for attorneys' fees and costs.

## Conclusion

Mr. Rojo's Motion for Default Judgment against Mr. Srivarodom is GRANTED. Mr. Rojo must file a motion detailing evidence for attorneys' costs and fees by **March 29, 2024**. A separate judgment will be entered against both defendants.

SO ORDERED.

DATED: March 6, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE